*236 OPINION.
SteRniiagen :
The petitioner seeks to have included in its statutory invested capital an amount of $2,734,900.31, which was expended by it prior to 1909, as shown in the findings. These expenditures, it is said, were not current expenses but were investments by the petitioner in a capital asset, which it calls its “ intangible structure,” made to establish and build up its business for the future, irrespective of the immediate return. The items were not capitalized in the petitioner’s accounts but were written off currently through profit and loss; but petitioner attributes this to overconservative bookkeeping which it says should not preclude full consideration of the true nature of the outlay. Without going further, we adopt this view as correct, leaving it to a consideration of other facts as well as bookkeeping to determine the proper treatment of the expenditures and the taxpayer’s rights under the statute.
From the evidence, most of which as to essential facts is not in dispute, we gather, and the Commissioner admits, that substantia] *237 sums were spent by this corporation in the early period of its existence in the promotion and expansion of its business. The taxpayer argues that all of the amount in question was so spent and hence was an investment. The Commissioner urges that some part was not promotion and expansion but was the cost of maintenance and hence not invested but properly chargeable against current income. Thus it will be seen that the question becomes one of evidence of the extent to which the amount in question is to be classified and apportioned between capital and expense.
The Commissioner raises the shield of the burden of proof to defend his complete disallowance, the argument being that there can be no allocation to capital except to the extent actually proven, and since it is clear from the evidence that some uncertain part of the amount, however slight, is not capital, no allowance can be made. Falsus in uno, falsus in omnibus.
There can be little doubt in the minds of reasonable men fairly acquainted with modern business that promotion expenditures like those before us have a significance similar to the investment in more tangible assets. They fertilize the field for new production. The free distribution of samples at the state fair is justified only if it lures a new customer. It was not to the housewife already convinced that the petitioner planned to give away its samples of yeast year after year, but to one who would become a new unit in its expanding business. In this way it was risking new capital in the business in the hope of future profits — making an investment. Whether this investment is to be called good will or trade name or trade-mark, or something else, is unimportant. It may not need a name, except for accounting purposes, in order to reflect the expenditure and yet not ignore its investment significance.
Generally and theoretically, therefore, it is safe to say that some part of the cost of a campaign or system of promotion may be of permanent significance and may be regarded as a capital investment rather than a deductible expense. But how far in a given case the recognition of this doctrine may require the capitalization of some expenditures and the charging off of others is hard to say. Clearly, when the question is submitted for judicial consideration, it may not be answered ab inconvenienti by an arbitrary rule. The present case demonstrates this clearly. The petitioner during all the twenty-nine years of its life through 1921 spent amounts of similar character which it classified similarly in its accounts. These it claims were capital before 1909, although it deducted them as expense after 1908. Obviously no such distinction existed in fact, even if petitioner’s alleged peak of expansion occurred in 1908. To say that before the alleged peak, when there was no tax based on *238 income, no part was current expense, and immediately thereafter, when taxable income could be reduced by these deductions, all of it was current expense, would require support greater than appears in che present record. The officer’s statement is not convincing.
Looking alone to the years prior to 1909 covered by the claim, we find no such evidence as enables üs to say with any assurance how much capital ⅞-as invested and how much of the outlay was properly charged oif. As to each class of expenditure the record shows the amount spent each year. Each one varied from year to year. Take, for example, the three items of agents’ expenses, agents’ salaries, and promotion men’s salaries and expenses.
[[Image here]]
These wide variations lead one, in the abseiice of any further knowledge, to doubt that there was any consistent policy of investment or any satisfactory way of determining a fair allocation; Perhaps it would be reasonable to believe that as time went on and the business grew the proportion of capital decreased and current maintenance increased. But as to this the Board has no knowledge of the probabilities and there is no proof. It is not a matter of judicial notice, and we are not permitted to guess. If anyone has any evidence upon which an allocation can be predicated, such evidence must be produced by the petitioner. Any analysis which this Board might otherwise make of the bare figures in evidence would require assumptions that it is not our province to make.
We are therefore constrained to approve the Commissioner’s dis-allowance notwithstanding our approval of the general contention of the petitioner’s counsel that in a proper case invested capital may include a proper part of the amounts expended for promotion in the early period of a business.
The impossibility of finding the portion to be capitalized brings the case squarely within section 321, Revenue Act of 1918, and it is our opinion that an investigation should be made by the Commissioner under section 328, so that if the amount of tax paid by comparable corporations is such as to reduce the petitioner’s deficiency, that may be done.
Judgment will he entered on 15 days’ notice, under Rule 50.