COLONIAL ICE CREAM CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8354.   Promulgated May 28, 1927.

> Where it appeared that an extraordinary expenditure for advertising in a certain year resulted in benefit to a business in the year of expenditure as well as in subsequent years, and that, therefore, the entire expenditure was not of a capital nature, *held,* in the absence of evidence upon which a proper allocation could be made between capital and current expense, that the Commissioner's refusal to permit any part of the expenditure to be capitalized must be approved.

*Arthur N. Presmont, Esq.,* for the petitioner.
*Harold Allen, Esq.,* for respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for the calendar year 1921 in the amount of $10,007.49. The only question at issue is whether or not a certain sum of money, expended by petitioner during the year 1920, constituted a capital expenditure.

### FINDINGS OF FACT.

Petitioner is a Pennsylvania corporation, organized in May, 1919, with its principal office and place of business at Philadelphia. It was organized for the purpose of engaging in the business of manufacturing and selling ice cream and ice. At organization, it had an authorized capital stock of $100,000, of which $35,000 was paid in at that time. At the end of 1919, the amount of capital stock paid in

was $208,500, and at the end of 1920, the amount was $1,195,200.  At the end of 1921, the amount of capital stock paid in was $1,215,200. In June, 1919, petitioner acquired property on which to build its factory, and shortly thereafter entered upon an advertising campaign to create a market for its product.  On March 4, 1920, it began the manufacture of ice cream.  During the month of March, 1920, petitioner manufactured about 6,000 quarts of ice cream, and from that date to the end of the year it manufactured approximately 6,000,000 quarts.  During the year 1921, it manufactured over 11,000,000 quarts of ice cream and during 1922 it manufactured approximately the same quantity.

After the organization of the corporation in 1919 it began an advertising campaign to create a market for its product, and during 1919 and 1920 expended the total sum of $206,140.63 for organization expenses, advertising expenses, ice cream cabinets and the expense of installing them.  This amount the petitioner set up on its books as " organization and development expenses " and treated as a deferred expense to be spread over three years, claiming a deduction of $68,713.55, or one third thereof, in 1921, which deduction was disallowed by the respondent, which gave rise to the deficiency asserted.

Of the total amount of $206,140.63, the amount of $5,198.26 was expended in 1919 for organization expenses.  In 1920, $46,453.69 was spent for ice cream cabinets and expenses of installation.  These cabinets had a useful life of three years.  The amount of $154,488.68 was spent for advertising in 1920, which amount the respondent allowed as a deduction as expense in that year.  The advertising consisted of personal solicitation of salesmen in an effort to induce retail dealers to handle petitioner's product, and advertisements in street cars and along the highways.

During the year 1921, petitioner spent approximately the sum of $143,000 for advertising purposes, which amount it charged off as expense in that year.  Petitioner's return for the year 1920 showed a net operating loss, with no tax due, while its return for 1921 disclosed a net income of $151,355.77.

### OPINION.

TRAMMELL: The essential facts in this proceeding, set out in our findings of fact, are uncontroverted.  Petitioner was organized in May, 1919, and in the following month acquired property on which to erect its factory for the manufacture of ice cream and ice.  Concurrently, it began an advertising campaign to create a market for its product, and during the remainder of 1919 and the year 1920, expended the total sum of $206,140.63 for organization and advertising expenses.  This amount, set up on its books as " organization

and development expense," it treated as a deferred expense to be spread over three years, and claimed a deduction of $68,713.55, or one-third thereof, in its tax return for 1920 and a like amount in its return for 1921. Of the total amount the sum of $5,198.26 was expended in the year 1919 for organization expenses, and was a capital expenditure. Of the remainder, the amount of $46,453.69 was spent for ice cream cabinets and expenses of installation, which is a capital expenditure, leaving the amount of $154,488.68 spent for general advertising in 1920, which respondent determined to be an ordinary and necessary business expense, deductible in 1920, the year in which it was paid. Accordingly, respondent disallowed the deduction of $68,713.55 claimed by petitioner in its 1921 return. This action gave rise to the deficiency asserted. Respondent also determined the useful life of the ice cream cabinets to be three years and allowed a deduction of one-third of the amount spent therefor for the year 1921. Petitioner asserts that the balance of $154,488.68 spent for advertising in 1920 was a capital expenditure, and that it is entitled to a deduction of one-third of this amount also for the year 1921. Thus, the sole issue tendered for consideration here is whether or not the amount expended by petitioner in 1920 for advertising constituted a capital expenditure, and whether or not it is entitled to a deduction of one-third of that amount for the year 1921.

The earnest insistence of counsel for the petitioner in presenting its theory of the case merits our careful consideration. Briefly summarized, petitioner's contentions are that the expenditure for advertising in 1920 was made during the first year of its existence; that the amount spent for this purpose was abnormally large because of the fact that it was seeking to establish a market for its product and that it should be permitted to take deductions over a series of years for this abnormal and unusual expense in order that the subsequent years which received the benefit of the advertising might bear their proportionate part of the cost thereof. Both at the hearing and in its brief petitioner cited numerous authorities tending to support its contentions. And we may add that with the principles asserted we are in entire accord. The difficulty presented is in the application of those principles to the facts before us.

In the *Appeal of Northwestern Yeast Co.*, 5 B. T. A. 232, at page 237, we said:

There can be little doubt in the minds of reasonable men fairly acquainted with modern business that promotion expenditures like those before us have a significance similar to the investment in more tangible assets. They fertilize the field for new production. * * *

Generally and theoretically, therefore, it is safe to say that some part of the cost of a campaign or system of promotion may be of permanent significance and may be regarded as a capital investment rather than a deductible expense.

So, in the case under consideration, it is apparent that the benefits flowing from the advertising campaign of petitioner and the expenditures made therefor in 1920, continued through subsequent years, and to that extent may properly be regarded as a capital investment of more or less indefinite duration. It is likewise apparent that some portion of those expenditures should be regarded as current operating expenses properly chargeable against current income, since petitioner began active operations on March 4, 1920, and during that year manufactured approximately 6,000,000 quarts of ice cream. During the year 1921, petitioner manufactured about 11,000,000 quarts of ice cream and expended in round figures $143,000 for advertising, all of which it charged to current expense. If it be conceded, as contended by petitioner, that years subsequent to 1920 received benefits from the advertising expenditure of that year, it must also be conceded that subsequent years received benefits from the advertising of 1921, which approached in magnitude that of 1920. Yet petitioner makes no such concession.

A taxpayer has no option to treat expense items as capital or capital expenditures as ordinary and necessary expenses of carrying on a trade or business. The nature of the expenditure must be determined from the facts. *Appeal of Gilliam Manufacturing Co.*, 1 B. T. A. 967.

Under the Revenue Acts of 1918 and 1921, a taxpayer is not permitted to use the expenses, liabilities or deficit of one year to reduce the income of a subsequent year, except to the extent permitted by the net loss provisions. The fact that petitioner had no income or an insufficient income in 1920 against which it could apply a deduction for the advertising expenses in question, but had a net income of more than $151,000 in 1921, can not be determinative of the issue here involved.

Inasmuch as it clearly appears from the evidence that the whole sum expended by the petitioner for advertising in 1920 did not constitute a capital expenditure, the question arises as to what portion of that sum is properly allocable to capital and what portion to expense. On this point, the record before us is silent. No evidence was offered by the petitioner from which we can determine the proper allocation, or approximate with reasonable accuracy a correct segregation. A similar situation was before us in the *Appeal of Northwestern Yeast Co., supra*, in connection with which we said :

From the evidence, most of which as to essential facts is not in dispute, we gather, and the Commissioner admits, that substantial sums were spent by this corporation in the early period of its existence in the promotion and expansion of its business. The taxpayer argues that all of the amount in

question was so spent and hence was an investment. The Commissioner urges that some part was not promotion and expansion but was the cost of maintenance and hence not invested but properly chargeable against current income. Thus it will be seen that the question becomes one of evidence of the extent to which the amount in question is to be classified and apportioned between capital and expense.

* * * But as to this the Board has no knowledge of the probabilities and there is no proof. It is not a matter of judicial notice, and we are not permitted to guess. If anyone has any evidence upon which an allocation can be predicated, such evidence must be produced by the petitioner. * * *

We are therefore constrained to approve the Commissioner's disallowance notwithstanding our approval of the general contention of the petitioner's counsel that in a proper case invested capital may include a proper part of the amounts expended for promotion in the early period of a business.

Again, in the Appeal of J. H. Sanford, 2 B. T. A. 181, we said:

A part of the expenditures which the taxpayer seeks to deduct are deductible as business expenses. The remainder are capital expenditures. We can not determine or even approximate a correct segregation. * * * Without this evidence before us we are constrained to approve the determination of the Commissioner.

See also Appeal of Bonta Narragansett Realty Corporation, 1 B. T. A. 208; Appeal of Gude. Brothers, Kieffer Co., 2 B. T. A. 1029; Appeal of Sentinel Publishing Co., 2 B. T. A. 1211; Richmond Hosiery Mills, 6 B. T. A. 1247.

For the reasons indicated, the determination of the respondent is approved.

Judgment will be entered for the respondent.