## RICHMOND HOSIERY MILLS v. COMMISSIONER OF INTERNAL REVENUE.*

Circuit Court of Appeals, Fifth Circuit.
November 23, 1928.

No. 5352.

Sam E. Whitaker and J. B. Sizer, both of Chattanooga, Tenn. (Whitaker & Whitaker and Sizer, Chambliss & Sizer, all of Chattanooga, Tenn., on the brief), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., Millar E. McGilchrist, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Int. Rev., and V. J. Heffernan, Sp. Atty., Bureau of Int. Rev., both of Washington, D. C. (J. Louis Monarch, Sp. Asst. Atty. Gen., and Clark T. Brown, Sp. Atty., Bureau of Int. Rev., of Washington, D. C., on the brief), for respondent.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Petitioner, a Georgia corporation, engaged in manufacturing hosiery, had mills at Rossville, Ga., and Chattanooga, Tenn. In 1908 it adopted and copyrighted the trade-mark "Wunderhose" for certain of its products made at the Chattanooga mill and from the latter part of that year until the early part of 1914 it carried on an extensive campaign advertising "Wunderhose," and expended $223,749.77 for that purpose. Petitioner employed a number of traveling salesmen to sell its products. These men ostensively sold two lines of hosiery, one under the name of the Richmond Hosiery Mills and "Wunderhose" under the name of the Chattanooga Knitting Mills. For the years in which this expenditure was made the amount spent in each year was charged to expense on the books and returns for taxes made accordingly. In 1918, 1919, and 1920, petitioner sought to restore the amount spent for advertising "Wunderhose" to capital account as invested capital, on the theory that the value of the said trademark as an asset was increased to that extent. The Commissioner of Internal Revenue refused to permit this, and, on the returns as a whole, determined deficiencies of income and profit taxes for these years of approximately $48,600. On appeal to the Board of Tax Appeals, the deficiency was reduced to about $42,800, the reduction having reference to other items, but the Com-

*Certiorari denied, 49 S. Ct. ——, 73 L. Ed. ——.

missioner was sustained in his decision as to the return of the amount expended for advertising "Wunderhose" to capital account.

The only question presented on this appeal is whether petitioner may include in its invested capital the aggregate amount of $223,774.77 expended in the intensive campaign to advertise a particular brand of hosiery under the trade-mark "Wunderhose."

The board found that the trade-mark "Wunderhose" had some value as an asset, and during the years 1918–1920, inclusive, was an income-producing factor, but also reached the conclusion that a substantial part of the advertising of "Wunderhose" produced immediate, rather than prospective, benefits, and that it was unable to make a satisfactory segregation as between capital and expense of the entire amount expended. This finding is challenged by petitioner on the ground that a number of witnesses testified to the fact that the trade-mark "Wunderhose" had a value of $200,000 or $300,000 or higher, and that the minimum value shown should have been adopted by the board and petitioner permitted to restore that amount to capital account.

Examination of the evidence in the record shows that the witnesses who testified as to the value of the trade-mark were merely giving an opinion, not based on any concrete facts shown, except a large increase in sales. This might be attributed to the efforts of the salesmen as well as to the advertising. No effort was made to have an expert audit the books to determine what proportion of the amount expended for advertising should be allocated respectively to expense and capital account. It is certain that some part, and probably the larger part, should be considered as an expense, and much weight is given to this conclusion by the charging of the total amount to expense initially.

Conceding that an expenditure erroneously charged to expense may be transferred to capital in a subsequent taxable year, if truly an investment in a capital asset, the burden was on petitioner to show with reasonable certainty the amount properly attributable to the increased value of the trade-mark, and this burden is not sustained by opinion evidence as to its present value.

We agree with the conclusion reached by the board. The record presents no reversible error.

Affirmed.