## J. C. BLAIR CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Third Circuit.
September 10, 1929.

No. 4039.

W. W. Spalding and Robert A. Littleton, both of Washington, D. C. (Mason, Spalding

& McAtee, of Washington, D. C., of counsel), for appellant.

Mabel Walker Willebrandt, Asst. Atty. Gen., and Randolph C. Shaw and Morton P. Fisher, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, and P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before BUFFINGTON, Circuit Judge, and THOMPSON and SCHOONMAKER, District Judges.

BUFFINGTON, Circuit Judge. This case grows out of a stationery and pad manufacturing business carried on at Huntingdon, Pa., originally by J. C. Blair from 1867 to 1881, and thereafter by the corporation taxpayer, J. C. Blair Company. J. C. Blair was the originator of the tablet industry and the use of illuminated covers therefor which made them attractive to school children. A great number of such designs accumulated from time to time and constituted the design part of the business. During the years from 1891 to 1917, inclusive, the company charged to capital accounts on its books $101,093.39 for items entering into its design plant, although its books did not include any account designated "design plant," nor was there any separate account wherein such stated sum or any part thereof recorded. The system of accounting was to capitalize expenditures for outside purchases only. All salaries of executive officers, general overhead items, and the clerical expenses and wages of preparing, cataloguing, and handling generally the designs, lithographs, electrotypes, and other such paraphernalia, were entered as expenses, and were not carried to capital account.

Later, as federal taxes were imposed, the corporation taxpayer employed an auditing company, and as a result of such company's work became dissatisfied and sought to change its actual practice, followed for 30 years, of charging the expenditures referred to as expense, and instead carry them into capital as a so-called "design plant" account. The method of so doing is described in the findings of fact by the tax board as follows: "The items of expense, consisting of salaries of the president, vice president, design recorder, stenographers, and factory artist, represent the actual payment of salaries and wages, as shown by the books, and the amount allocated to cost of the design plant included an addition of 40 per cent. of such salaries and wages for general overhead. The amounts allocated to cost of design plant on account of 'printer proving designs' and 'printer underlaying cuts' represent wages of employees who are claimed to have spent part of their time developing color schemes, etc., and finishing up cuts, plus 75 per cent. of such wages for overhead. Also, 75 per cent. for overhead was added to the amount of wages allocated to cost for 'press helper' and 'printer filing and numbering.' The percentages of increase for overhead were not matters of record in the petitioner's books."

"It will thus appear that, as stated in such opinion, a question here involved is whether the tax board "erred in refusing to include in the computation of invested capital, for the years 1918, 1919, and 1920, the amount of $156,511.91, alleged by the petitioner to represent that part of the cost of its design plant erroneously charged to expense during the years from 1891 to 1921."

The Commissioner, while conceding that such change to the extent of $101,093.39 was shown by the books, and therefore justified and now allowed, contended, inter alia, that any additional change was not allowable, because the retrospective appraisal made by the auditing company depended in large measure upon speculative estimates as to both basic and overhead figures. In that respect the finding of the tax board was:

"The percentages of overhead allocated to cost were not matters of record in the petitioner's books, and the evidence does not disclose that those who participated in making the allocations, both of salaries and overhead, had personal knowledge of the facts essential to the making of substantially accurate allocations. The president was the only witness who had been with the company during the prior years.

"This officer was an employé of the petitioner in 1891, and has continued his connection with the corporation down to the present time. He became president in 1919, but during the early years subsequent to 1891, the evidence does not disclose that he exercised any supervision over the design plant or performed any functions pertaining thereto. It is not shown that his personal knowledge was more than casual with respect to the amount of time devoted by the various officers and the employees of the petitioner during those years in creating or building up the design plant, nor that he otherwise possessed accurate information as a basis for the allocations made."

In view of the taxpayer's long-continued prior practice, of the nonexistence of justifying evidence in the books, and lack of personal and scientific knowledge of the witness above named, and also of Rymer, the auditor of the company, we find no error in the conclusion reached by the tax board. Moreover,

the utter futility of the taxpayer's effort to apportion items of salary and wages between expense and plant construction will be seen when its books contain no record of the time spent on each. It was possible for the company to have kept an accurate record of the time of each employee spent on plant and expense. This, as we have said, it did not do, but for a long period of years charged all labor and salary items to expense. To apportion them now is but to guess.

It remains to consider the item of $300,000, March 1, 1913, valuation of the "design plant" claimed by the taxpayer as a basis for computation of depreciation thereon. In principle, such contention is disposed of by what has been already said, for there is no proper proof to fix such value. In addition thereto, the allowance and assessment of the Commissioner were prima facie right and the burden was on the Blair Company to overcome such prima facies. The Commissioner was, under the circumstances of this case, not bound to accept the retrospective estimates of Koch and McSheehy (La Belle Iron Works v. U. S., 256 U. S. 387, 41 S. Ct. 528, 65 L. Ed. 998; The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937), but might exercise his independent judgment.

In disposing of the several contentions made, and affirming the decree made, we find support in the foregoing authorities, to which we add Richmond v. Commissioner (C. C. A.) 29 F.(2d) 262; Bogle v. Commissioner (C. C. A.) 26 F.(2d) 771; Balaban v. Commissioner (C. C. A.) 30 F.(2d) 807.