## NEW PITTSBURGH COAL CO. v. UNITED STATES.

No. 11467.

United States Court of Appeals
Sixth Circuit.

Dec. 1, 1952.

Chalmers M. Parker, Columbus, Ohio (O. K. Price, Pittsburgh, Pa., Chalmers M. Parker and Robert D. TouVelle, Columbus, Ohio, on the brief), for appellant.

I. Henry Kutz, Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, Richard D. Harrison, Washington, D. C., R. J. O'Donnell, U. S. Atty., Loren G. Windom, Asst. U. S. Atty., Columbus, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

PER CURIAM.

The Taxpayer, New Pittsburgh Coal Company, is an Ohio corporation created

by the merger and consolidation of The New Pittsburgh Coal Company and The Great Lakes Coal Mining Company, on December 31, 1923. Its predecessor, The Great Lakes Coal Mining Company, had acquired bituminous coal mining property in Ohio, and during the year 1920, and prior and subsequent thereto, was engaged in the business of mining and marketing coal therefrom.

On April 13, 1921, The Great Lakes Coal Mining Company filed its completed income and excess profits tax return for the calendar year 1920 and thereafter paid the tax of $180,502.42, as shown thereby. Thereafter, the Commissioner of Internal Revenue assessed a deficiency tax for 1920 in the amount of $13,116.63, which was paid on June 23, 1927. Of this amount $12,892.47 was assessed because of the Commissioner's determination that the cost of certain items of equipment which the Company had charged to expense in 1920 should have been charged to capital, and was erroneously deducted by the taxpayer from gross income as a current business expense. The taxpayer duly filed a claim for refund, which was allowed by the Commissioner in the amount of $1,237.71. The balance of the claim in the amount of $11,654.76 was disallowed by letter of September 7, 1933. A reconsideration of the claim having been denied by the Commissioner, the taxpayer filed the present action in the District Court for the recovery of the amount disallowed.

The District Judge held that the Commissioner erroneously transferred certain expenditures from expense items to capital account and gave judgment for the plaintiff in the sum of $8,277.64 with interest. He held that the taxpayer had not shown that the remaining items in dispute should be classified as operating expenses. The taxpayer has appealed from so much of the judgment as refused to give it the full amount sought. The Government has not appealed from that part of the judgment which went against it.

The items which the Commissioner transferred from expense to capital in making the deficiency assessment, including those which the District Judge held should not have been so transferred, are shown in detail in the Memorandum of the District Judge, reported at 99 Fed.Supp. 253. The expenditures which the District Judge held were properly classified as operating expense were for the installation of an electric hoist, the purchase of 80-pound rails used in building a track, the purchase of three transformers used to extend the power lines to the coal, and the purchase of 110 mine cars. In so holding, the District Judge found as a fact that at the time of the expenditures the mines had been fully developed and equipped to their predesigned and normal output capacity. He held with respect to some items that the installation was for the purpose of maintaining established production as the working faces receded during the progress of the work, and with respect to other items that the installation did not increase production or decrease the cost of operation. This was the correct test to apply. § 234 (a)(1) Revenue Act of 1918; Treasury Regulation 45 (1920 Edition) Article 222; United States v. Roden Coal Co., 5 Cir., 39 F.2d 425; Marsh Fork Coal Co. v. Lucas, 4 Cir., 42 F.2d 83; Commissioner of Internal Revenue v. Brier Hill Colliers, 6 Cir., 50 F.2d 777.

Applying the same test, the District Judge found against the taxpayer with respect to the following remaining items in dispute.

He held there was no evidence as to the exact use made of any of the 40-pound rails in question. We agree with the ruling. Although rails used for certain purposes are properly deductible as expense items, they are not so deductible if used in other ways. We can not assume, without proof of some sort, as contended by the taxpayer, that since coal was being mined and the face of the mine receding, these rails were used in order to maintain normal output. The valuation report of the engineer for the Bureau of Internal Revenue indicated otherwise. Botany Worsted Mills v. United States, 278 U.S. 282, 289–290, 49 S.Ct. 129, 73 L.Ed. 379; Burnet v. Houston, 283 U.S. 223, 227–228, 51 S.Ct. 413, 75 L.Ed. 991.

148

The District Judge held that the rails charged in 1920 to Mine No. 16 were used to build a temporary storage track which was used solely for the purpose of storing empty cars during the period of the railroad car shortage. This track was outside the mine. In support of the ruling, the Government contends that there was no testimony that the output had fallen below capacity because of any car shortage, and that accordingly the taxpayer failed to prove that this expenditure was necessary in order to maintain normal output. We do not think such a conclusion follows. Obviously, the normal effect of a car shortage over a material period of time would result in a reduction of output. Storing of empty available cars on a storage track would be one way to prevent a decrease in production. We think the taxpayer was justified in meeting this problem by preparing for it in advance before production was actually curtailed. Although production was never curtailed, no doubt it was this action on the part of the taxpayer that enabled normal output to be maintained. The findings are that a car shortage existed, the storage track was temporary, and that it was used *solely* for the purpose of storing cars *during the car shortage*. This item was properly charged as an operating expense. Marsh Fork Coal Co. v. Lucas, supra; Commissioner of Internal Revenue v. Brier Hill Colliers, supra.

The District Judge found that there was no evidence that adding machines put in use in the office of a mine in 1920, a furnace installed in the superintendent's office at one of the mines, or that a freight elevator installed in a company store at one of the mines, were necessary to maintain normal output. We agree with the ruling. Although these were conveniences to the personnel, the actual effect upon the volume of production, without any supporting data, is too indefinite to justify a finding that they were necessary to maintain normal output. Commissioner v. Harman Coal Corp., 4 Cir., 200 F.2d 415, Sept. 17, 1952. In other businesses they would be treated as capital expenditures by established accounting practice.

The judgment of the District Court is affirmed in part and reversed in part, and the case is remanded for a modified judgment in accordance with the views expressed herein.