**E. H. SHELDON & CO.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 11988.

United States Court of Appeals
Sixth Circuit.
July 27, 1954.

Platt W. Dockery, Grand Rapids, Mich. (George S. Norcross, Warner, Norcross & Judd, Grand Rapids, Mich.,

Robert J. Bird, Washington, D. C., on the brief), for petitioner.

Joseph F. Goetten, Washington, D. C. (H. Brian Holland, Ellis N. Slack, I. Henry Kutz, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, MILLER, Circuit Judge; and STARR, District Judge.

MILLER, Circuit Judge.

E. H. Sheldon and Company, a Michigan Corporation, hereinafter called Sheldon, appeals from the order of the Tax Court sustaining the disallowance by the Commissioner of deductions from gross income based on accrued vacation pay to employees and certain expenses incurred in publishing its catalog, with resulting deficiencies in income tax for 1945, and excess profit taxes for 1943 and 1944.

Sheldon's business was the design, manufacture and installation of complete laboratory equipment. Its customers were for the most part schools, colleges, institutions, hospitals and corporations where laboratories were needed, and its plan of operation was not to sell individual items, but to design, manufacture, and install laboratory equipment as a unit designed to fit its customers' individual needs. It reported its income for tax purposes on an accrual, calendar year basis.

Vacation Pay

On May 9, 1945, Sheldon entered into a contract with a local labor union effective May, 1, 1945 through April 30, 1946, containing the provision that it would remain in effect for another year unless notice to terminate or change the contract was served by one party upon the other not less than 60 days prior to April 30, 1946. In addition to the usual matters covered in such contracts, it contained a new provision dealing with vacation pay. It provided that vacation pay was to be determined and computed May 1st, the start of each contract year, the employees being divided into two groups for that purpose. Group 1 consisted of union employees having from one to five years' service as of May 1st. Members of this group received one week's vacation pay. Group 2 included employees with five or more years' service. These employees would receive two weeks' vacation pay. Vacation pay was computed at 2% and 4% respectively of the previous contract years straight time earnings, to be paid at the time the vacation was taken. The vacation period was from May 1st to December 1st in each year.

Sheldon paid $21,214.40 in 1945 to its union employees as vacation pay under this contract, which it claimed as a deduction in its income tax return for 1945. This deduction was allowed. It also claimed as a deduction for 1945 an additional amount of $14,143.16, which it estimated on December 31, 1945 would be two-thirds of its vacation pay obligation payable in 1946. During 1946, Sheldon paid the sum of $20,232.42 to its employees, as vacation pay under its contract. The deduction of $14,143.16 was disallowed by the Commissioner, which ruling the Tax Court upheld.

██ We agree with the ruling of the Tax Court on this issue. On December 31, 1945, there was no contract obligation on the part of the taxpayer to make any vacation payments during the year 1946. The existing contract which provided for vacation payments in 1945 only, expired on April 30, 1946. Whether the contract would be renewed on May 1, 1946, which renewal would be necessary to create any obligation for vacation pay in 1946, would not be known until 60 days prior to April 30, 1946. A taxpayer is not entitled to an expense deduction on the accrual basis if there is no legal obligation during the taxable year to make such payment. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733; Bauer Bros. Co. v. Commissioner of Internal Revenue, 6 Cir., 46 F.2d 874, 876; Fourth Avenue Amusement Co. v. Glenn, 6 Cir., 201 F.2d 600, 605.

The reasonable probability during the taxable year that a liability will accrue is not sufficient if, as a matter of fact, it does not actually come into existence during the taxable year. A liability does not accrue for tax purposes as long as it remains contingent, or if the events necessary to create the liability have not occurred. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725.

The taxpayer claims that in March 1946 when it executed and filed its return for 1945, the contract with the Union had been renewed for another year beginning May 1, 1946, and that its obligation for vacation pay for 1946 was then in existence. The date on which the 1945 return was filed is not the controlling date. The decisive question is when the liability came into existence, not when the return was filed. Brown v. Helvering, supra; Lucas v. American Code Co., 280 U.S. 445, 50 S. Ct. 202, 74 L.Ed. 538; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270.

### Catalog Expense

The Tax Court found the facts on this issue, which were undisputed, to be as follows: Sheldon used salesmen, sales engineers and others to sell its products, and endeavored to supply a complete laboratory rather than merely to sell pieces of laboratory equipment. It carried only a few items in stock and made most of its products on orders. It advertised in a few trade and professional magazines, mailed circulars to selected groups and printed and distributed catalogs from time to time. Selected sections of catalogs were sometimes separately printed and distributed. No prices were shown in any of the catalogs.

Complete catalogs were published in 1927, 1931, 1937, 1946, and another was in process of being printed in April 1952. Several reprints and a number of sections were also printed and distributed during that period of time. It published new sections and new complete catalogs from time to time as it brought out new and improved products and designs. It would continue to make sales of some of the products shown in its catalogs over long periods of time while other products shown in the catalogs might become obsolete in a relatively short time.

The catalogs were intended to be reference books of information on equipment which was available and a tool to aid the representatives of the taxpayer to get in touch with those desiring its products so they could suggest and eventually sell a complete laboratory. The catalogs played a part in practically every sale but few sales were made solely because of the catalogs. With practically all sales Sheldon supplied service pertaining to installation of the products.

Sheldon began to prepare a new catalog in 1944, the first copies of which were received in September 1946. The complete catalog was called No. 25 and 3,676 copies of it were printed and distributed. Portions of the complete catalog showing the equipment available for use in industry and advanced sciences was bound as catalog No. 26 and 4,800 copies thereof were printed and distributed. Portions of the complete catalog showing the equipment available for use in additional institutions was bound as catalog No. 27 and 7,800 copies thereof were printed and distributed.

The expense of printing and distributing the catalogs was incurred in the years and in the respective amounts as follows: In 1944, Sheldon incurred an expense of $8,000, all of which was carried as a deferred expense with no deduction being taken on the 1944 return. In 1945, it incurred an expense of $22,-610.51, of which amount $19,810.51 was taken as a deduction in the 1945 return and the balance of $2,800 carried as a deferred expense. In 1946, it incurred an expense of $37,485.88. In its 1946 tax return it claimed a deduction of $42,-285.88, using some of the amounts deferred from 1944 and 1945.

The Commissioner disallowed the deductions claimed in the 1945 and 1946

returns and determined deficiencies for those years on the ground that the cost of the catalogs was recoverable only through amortization over a period of useful life of five years, commencing on September 1, 1946, the date of publication. He allowed $4,985.16 of the total cost as a deduction for 1946.

The Tax Court made findings, based on the foregoing facts, that each of the catalogs Nos. 25, 26 and 27 represented property used in the business of the taxpayer which had a useful life beyond the year of publication; that the expenditures of the taxpayer made in the years 1944, 45 and 46 were not ordinary and necessary expenses of carrying on the business during those years but were capital expenditures, and that a reasonable allowance for the exhaustion, including a reasonable allowance for obsolescence, of the catalogs for 1946 was not in excess of $4,985.16, the deduction allowed by the Commissioner.

The Tax Court rejected Sheldon's contention that the cost of printing and distributing the catalogs was advertising expense, or substantially the equivalent of advertising expense, and sustained the contention of the Commissioner that since the catalogs were capital assets which had useful life extending well beyond the one year their cost was a capital expenditure not deductible in the manner claimed by the taxpayer. It pointed out that the catalogs had no effect upon the income of 1944, 1945 and the first eight months of 1946, since they were put in use for the first time in September 1946, and that they continued to benefit the business for more than five years after that date. It said that cases where the period of useful life is so problematical and uncertain that costs can not be fairly recovered under Section 23(*l*), Internal Revenue Code, 26 U.S.C.A. § 23(*l*), and are allowed when paid or incurred, were not to be extended to a case like this, holding that deductions under that section are approximations at best, and that it is only necessary that a reasonable allowance be determined. 19 T.C. 481.

■■ Section 23(a) (1) (A) of the Internal Revenue Code provides that in computing net income there shall be allowed as deductions from gross income "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *." In the usual case current advertising expense is an ordinary and necessary business expense and so deductible within the meaning of that section. Colonial Ice Cream Co. v. Commissioner of Internal Revenue, 7 B.T.A. 154; F. E. Booth Co. v. Commissioner of Internal Revenue, 21 B.T.A. 148. Certain necessary business expenses, however, may be of such a nature that they are in fact capital expenditures rather than ordinary business expenses. In such a case they are not deductible as business expense in the year in which they are paid or accrued but are depreciated ratably over their useful life. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. Our present problem is accordingly whether the catalog expense, above referred to, is to be considered as an ordinary and necessary business expense in the nature of advertising, or whether it should be properly considered as a capital expenditure.

■ As a preliminary matter, we dispose of the Commissioner's contention that the finding of the Tax Court that such expenditures were not ordinary and necessary expenses of carrying on the business during the years in question but were capital expenditures is not clearly erroneous and is conclusive under Sec. 1141(a), Internal Revenue Code, 26 U.S.C.A. § 1141(a), and Rule 52(a) Rules of Civil Procedure, 28 U.S.C.A. The subsidiary facts in this case are uncontradicted, and such facts, so found by the Tax Court, are accepted by us under Rule 52(a). However, the findings of the Tax Court, which are now relied upon by the Commissioner, are conclusions drawn by the Tax Court from the uncontradicted subsidiary facts, the drawing of which did not involve any element of seeing or hearing the witnesses or of judging their credibility.

As we have heretofore pointed out, under such circumstances this Court will make its own evaluation of the conclusions to be drawn from the facts established by the evidence. Letcher County v. De Foe, 6 Cir., 151 F.2d 987, 990; Seagrave Corp. v. Mount, 6 Cir., 212 F.2d 389. See Orvis v. Higgins, 2 Cir., 180 F.2d 537, 539.

In our opinion, the cases do not support the Tax Court's ruling.

█ The effect of advertising, by its nature, is usually not limited to the year in which it is done, but has a useful life somewhat indefinite in the future. The fact that an expenditure produces something that has a useful life extending beyond the taxable year is clearly not the controlling test. J. H. Collingwood, 20 T.C. 937; Perkins Bros. Co. v. Commissioner of Internal Revenue, 8 Cir., 78 F.2d 152; Marsh Fork Coal Co. v. Lucas, 4 Cir., 42 F.2d 83; New Pittsburgh Coal Co. v. United States, 6 Cir., 200 F.2d 146. It has been held a number of times that advertising expense, even though incurred heavily in a certain year with resulting benefits over future years, is nevertheless a deductible expense for the year in which expended. Appeal of Northwestern Yeast Co., 5 B.T.A. 232; Colonial Ice Cream Co., supra; F. E. Booth Co., supra; A. Finkenberg's Sons, Inc., 17 T.C. 973, 982, 983; Consolidated Apparel Co., 17 T.C. 1570, 1582; Richmond Hosiery Mills v. Commissioner of Internal Revenue, 5 Cir., 29 F.2d 262.

█ The rule also appears well settled that such an expense cannot be capitalized by the taxpayer in the absence of evidence showing with reasonable certainty the benefits resulting in later years from the expenditure. In F. E. Booth Co., supra, the Board of Tax Appeals refused to allow the taxpayer to capitalize the cost of a national advertising campaign with resulting rata-

ble deductions over a period of years in the future, although the record showed large increases in sales in such years, on the ground that "any allocation between capital and expense of the advertising in question, made on the record herein would be a mere estimate. * * *" In Northwestern Yeast Co., supra, the Board refused to allocate a portion of such expense to capital account, because the evidence failed to disclose what a fair allocation should be, saying: "But as to this the Board has no knowledge of the probabilities and there is no proof. It is not a matter of judicial notice, and we are not permitted to guess." In A. Finkenberg's Sons, Inc., supra, the Tax Court refused to allow the taxpayer to defer certain promotional expenses, stating the rule as follows: "Advertising and promotional expenses cannot be charged to future years as deferred charges nor by amortization of a capital investment where the taxpayer fails to show that the future benefits can be determined precisely and are not of indefinite duration. * * * Cases cited by petitioner involve insurance premiums, mortgage renewal fees, and bond discounts in which the benefits in future years are definite and ascertainable mathematically. Expenses incurred and paid in prior years are not deductible in later years though incidental to earnings in later years." See also Richmond Hosiery Mills v. Commissioner, supra.

█ Applying the foregoing principles to the facts of this case, we are of the opinion that the Tax Court was in error in sustaining the ruling of the Commissioner with respect to the catalog expense incurred by petitioner.

The judgment of the Tax Court is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with the views expressed herein.