592

JOSEF C. PATCHEN AND ALEYNE E. PATCHEN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55767–55770.   Filed December 21, 1956.

*Harold E. Smith, Esq.*, for the petitioners.
*W. Preston White, Jr., Esq.*, for the respondent.

[1] The following proceedings have been consolidated: Josef C. Patchen and Aleyne E. Patchen, Docket No. 55767; Frank C. Mingledorff and Edna S. Mingledorff, Docket No. 55768; Harry F. Zimmerman and Winifred R. Zimmerman, Docket No. 55769; John J. Evans and Rosalie J. Evans, Docket No. 55770.

594

596

OPINION.

RICE, *Judge:* The principal issue to be decided is whether respondent can require a taxpayer,[2] which has changed its method of accounting, to adopt a conforming change in the method by which it reports its income. The partnership whose returns are here in issue was formed on November 15, 1946, to engage in the practice of professional engineering. During the period ended December 31, 1946, and the year ended December 31, 1947, such books and records as were kept by it were extremely rudimentary. However, they appear to have been essentially on the cash basis, and the returns which it filed were prepared on the cash basis. By 1948, the partnership's business had expanded

---

[2] Though the taxpayers herein are the members of the partnership rather than the partnership itself, they do not question the fact that they are required to compute and report their distributable shares of partnership income according to whichever system of accounting the partnership is required to use.

substantially and an accounting firm was employed to install a more detailed system of accounting. An essentially accrual system of accounting was thereafter maintained during the years 1948 through 1951, inclusive, but, in preparing its income tax returns for such years, the partnership continued to use the cash receipts and disbursements method.

Section 41 of the 1939 Code [4] requires that a taxpayer report its income "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * *." There is no ambiguity in that language and we accordingly hold that it was entirely proper for respondent to determine that the partnership income should have been reported on the accrual method for the years here in issue. *Charles D. Mifflin,* 24 T. C. 973 (1955); *Melvin E. Tunningley,* 22 T. C. 1108 (1954); *Deakman-Wells Co.,* 20 T. C. 610 (1953), reversed on other grounds 213 F. 2d 894 (C. A. 3, 1954); *Bradstreet Co. of Maine,* 23 B. T. A. 1093 (1931), reversed on other grounds 65 F. 2d 943 (C. A. 1, 1933); *Louis Kamper,* 14 B. T. A. 767 (1928); *Ribbon Cliff Fruit Co.,* 12 B. T. A. 13 (1928). In *Ribbon Cliff Fruit Co., supra,* the following pertinent statement appears, at page 16:

> The provisions of section 212 (b) of the Revenue Act of 1921 are controlling in the decision of this issue, and, so far as material here, are as follows:
>> The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * *
> There can be no question but that a taxpayer is privileged to adopt any method of accounting which it deems necessary for its business and that truly reflects its income. The statute contemplates that each taxpayer shall adopt such forms and methods of accounting as are in its judgment best suited to its purposes. Having adopted a particular method of accounting, and regularly employed that method in keeping its books, the statute requires that the taxpayer shall compute its net income, for the purposes of the tax, in accordance with that method, if income is clearly reflected thereby.

The partnership's income could, on the facts of this case, be clearly reflected by use of either the cash or accrual methods. Regs. 111, sec. 29.41. Having initially chosen to file its returns on the cash basis, it could not require respondent to accept subsequent returns prepared on an accrual basis unless it had first requested and received respondent's consent to such change. Regs. 111, sec. 29.41-2. This is true even though it had changed its accounting method and the method used in preparing its returns no longer coincided with that used in its books. *National Airlines, Inc.,* 9 T. C. 159 (1947); *Ross B. Hammond, Inc.,*

---

[4] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect income. * * *

36 B. T. A. 497 (1937), affd. 97 F. 2d 545 (C. A. 9, 1938); *American Conservation Service Corporation*, 24 B. T. A. 183 (1931). But the taxpayers' difficulty is of their own making and they are in no position to complain, as they do, that this result gives the respondent the option of accepting cash basis returns which are consistent with those previously filed, or of requiring that the returns be prepared on the accrual method in conformity with the partnership's books. If the accrual method proved to be a more accurate method for the taxpayers, then the respondent should also be entitled to the benefits of this increased accuracy. Moreover, respondent should not be burdened with the often difficult task of reconciling a cash basis return with a taxpayer's books maintained on some other system. It is not enough to say that either the cash method used by the partnership in its returns or the accrual method proposed by the respondent will clearly reflect income, and that consistency requires the continued acceptance of the partnership returns on the cash method. The requirements of section 41 are clear and must be followed.

Petitioners also argue that the partnership's books were not actually maintained on an accrual basis since, in computing the income taxable to the partners, adjustments had to be made by respondent to eliminate such book items as the deductions for partners' salaries and deductions for reserves for slack-time pay and vacation pay. This argument is without merit because the system used was clearly an accrual system even though the treatment of some items was not in accord with income tax requirements. Net income shown on a taxpayer's books need not coincide exactly with net income reportable for income tax purposes, and the adjustments made herein by respondent were no more than those frequently made in reconciling book income to taxable income. See *Geometric Stamping Co.*, 26 T. C. 301 (1956).

In determining the partnership's income on an accrual basis, respondent included in income for each of the years in issue the annual increase in its accounts receivable account. Petitioners contend that, even if an accrual system must be used in computing partnership income, the accounts receivable should not be regarded as income. They argue that the accounts receivable were merely interim billings based entirely on estimates, and that, in many instances, they represented amounts which were in dispute. However, the record indicates that the bills which the partnership rendered for its services were issued strictly in accordance with the contractual arrangements which it had with its clients and that it had a fixed or determinable right to the income included in such bills. Even if that may not have been the case with respect to some of the accounts receivable here in issue, no evidence to the contrary has been presented and respondent's inclusion of the total amounts of the accounts receivable in income must

be sustained. Moreover, the mere fact that in some instances the partnership subsequently had to make adjustments in the amounts billed does not negate the fact that the amounts billed represented taxable income under an accrual system. The record establishes that these adjustments were nothing more than the usual adjustments made by any business. Under our system of annual accounting for income tax purposes, the partnership could not postpone the reporting of accrued items of income solely because there was a possibility that adjustments might, in some instances, have to be made in a later year. See *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182 (1934).

The next matter to be discussed relates to the treatment of the balances in the partnership's jobs-in-progress account at the end of each of the years in issue. This account was created to enable the partnership to ascertain the precise costs incurred by it on each of the jobs on which it was engaged. All expenses attributable to the various jobs, such as wages, telephone, and travel, were charged to this account and then allocated to the specific jobs in a jobs-in-progress subsidiary ledger. Also charged to this account were those portions of partners' salaries attributable to specific jobs rather than general overhead. The additions to the various reserves for slack-time pay, vacation pay, and liability litigation were also treated as expenses and charged to the jobs-in-progress account. In an effort to match expenses with income, the items in this account were not taken as deductions on the partnership's books until such time as a bill was rendered to the firm's client. At that time, income was accrued by entering the bill in the firm's accounts receivable account, and the expenses attributable to the particular job were transferred from the jobs-in-progress account to the job-costs account, resulting in an expense deduction. Thus, the various items in the jobs-in-progress account were held in suspense and treated as deferred charges on its books, and the balance in the account appeared as a current asset on the partnership's balance sheet. In preparing the partnership's cash basis returns at the end of each of the years in issue, its accountants deducted the balances in the jobs-in-progress account. The effect of this was to claim a deduction for all the items remaining in the account as of the end of the year even though, on the partnership's books, such items were treated as deferred charges. Respondent determined that the balances in the jobs-in-progress account at the end of each of the years in issue should be treated in the same manner in which they were treated on the partnership's books (as deferred charges) and he disallowed the deduction taken by the partnership on its returns for such items. Insofar as the amounts remaining in the jobs-in-progress account, which represented charges to various as yet unbilled jobs, for partners' salaries and the reserves for slack-time pay, vacation pay, and liability litigation, respondent's action

in disallowing such amounts is clearly correct.[5] Partners' salaries are not deductible by a partnership in determining the distributable share of income to be reported by the partners. *Karl Pauli*, 11 B. T. A. 784 (1928). As for the aforementioned reserves, no proof has been introduced showing that a fixed or determinable liability existed, and their deduction was properly disallowed. *Morrisdale Coal Mining Co.*, 19 T. C. 208 (1952); *E. H. Sheldon & Co.*, 19 T. C. 481 (1952), reversed on another issue 214 F. 2d 655 (C. A. 6, 1954). However, the remaining items in the jobs-in-progress account (with the qualification hereinafter discussed regarding reimbursable items) constitute expenses which are deductible in the year in which incurred, even though the partnership's clients may not have been billed for the jobs to which such expenses related until a subsequent year. There is no provision in the Code permitting the postponement, by an accrual basis taxpayer, of the deduction of expenses from one year to another in order to obtain a precise matching of income and expenses. Respondent therefore erred in disallowing the deduction claimed by the partnership for wages, telephone, and other such expenses contained in the jobs-in-progress account.

One more item must be discussed, namely, the various reimbursable expenses which were included in the jobs-in-progress account and also in the job-costs account. It has been firmly established that where a taxpayer makes expenditures under an agreement that he will be reimbursed therefor, such expenditures are in the nature of loans or advancements and are not deductible as business expenses. *Glendinning, McLeish & Co.*, 24 B. T. A. 518 (1931), affd. 61 F. 2d 950 (C. A. 2, 1932); *Henry F. Cochrane*, 23 B. T. A. 202 (1931). The record indicates the aggregate dollar amount of contracts charged to the jobs-in-progress account at the end of each of the years 1948 through 1951, inclusive, which contained reimbursable items such as salaries of engineers and travel. Since there is nothing in the record which permits us to find the exact amounts of these reimbursable items, petitioner having introduced no evidence on this point, the entire amount of the charges for contracts containing reimbursable items must be excluded from the total amounts deductible by the partnership. As for the erroneous inclusion of reimbursable expenditures in the job-costs account, the partnership made a balancing error by also including such reimbursable expenditures in its accounts receivable, and, consequently, no adjustment need be made here.

---

[5] In addition to disallowing the deduction of the amounts in the jobs-in-progress account at the end of each of the years in issue which represented charges to various as yet unbilled jobs for partners' salaries and the reserves for slack-time pay, vacation pay, and liability litigation, respondent made another adjustment with respect to such items which resulted in adding to the firm's income, a second time, those portions of the jobs-in-progress account represented by such latter adjustment. Respondent now concedes this latter adjustment was erroneous and it will be taken into account in the Rule 50 computation.

The last item here in issue is whether the additions to tax prescribed by section 294 (d) (1) (A) for failure to file a declaration of estimated tax, and by section 294 (d) (2) for substantial underestimate of estimated tax can both be imposed in the same taxable year. This issue has been decided against the taxpayer in *Harry Hartley*, 23 T. C. 353 (1954), modified 23 T. C. 564 (1954); and in *G. E. Fuller*, 20 T. C. 308 (1953), affirmed on other grounds 213 F. 2d 102 (C. A. 10, 1954). No arguments have been presented in the instant proceeding to cause us to change our position, and respondent's determination of both of these additions to tax is sustained.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*