Walter J. and Marian Dannemiller, Husband and Wife v. Commissioner.
Dannemiller v. Commissioner
Docket No. 60357.
United States Tax Court
T.C. Memo 1958-107; 1958 Tax Ct. Memo LEXIS 121; 17 T.C.M. (CCH) 547; T.C.M. (RIA) 58107; June 9, 1958
*121 Petitioners, grain and commodity traders through a brokerage office in Canton, Ohio, near their home, deducted travel expenses for trips made to Chicago and New York to consult market experts. Held, petitioners failed to sustain their burden of establishing that such expenditures were made and also that such expenses would be ordinary and necessary expenses paid in carrying on a business under section 23(a)(1)(A), I.R.C. of 1939. Petitioners filed no declaration of estimated tax in the year 1952. Held, they were not excused from the necessity to file such declaration by reason of the speculative nature of their business and they were liable for the additions under sections 294(d)(1)(A) and 294(d)(2), I.R.C. of 1939. Earl C. Sheehan, Esq., for the petitioners. L. Robert Leisner, Esq., for the respondent. MULRONEY *122 Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency of $2,625.88 and additions to tax in the amount of $2,005.56 against the petitioners herein for the taxable year 1952. The two issues presented are: (1) whether petitioners are entitled to a deduction for the claimed business expenses incurred for making certain trips to Chicago and New York, and (2) whether petitioners are subject to additions to tax under sections 294(d)(1)(A) and 294(d)(2), Internal Revenue Code of 1939 for failure to file a declaration of estimated tax and for substantial underestimate of estimated tax for 1952. Findings of Fact The petitioners, Walter J. Dannemiller and Marian Dannemiller, are husband and wife who resided in Massillon, Ohio in 1952. Massillon is approximately eight miles from Canton, Ohio. They filed a joint income tax return for the year 1952 with the district director of internal revenue, Cleveland, Ohio. In the year 1952 petitioners traded in the grain and commodity markets of Chicago and New York and they had a gross income in that year from such trading in the sum of $48,645.10. All of their trading activities, consisting of their *123 buy and sell orders, were carried on at the Canton, Ohio office of Merrill Lynch, Pierce, Fenner & Beane. This was a brokerage firm and the Canton office maintained direct wire services to the Chicago and New York commodity and grain exchanges. In their income tax return for the year 1952 petitioners deducted the sum of $4,875.60 which was labeled "Travel, entertainment, etc.". Opinion Petitioners argue the sum of $4,875.60 deducted by them as "Travel, entertainment, etc." should have been allowed as trade or business expenses, evidently under the provisions of section 23(a)(1)(A), Internal Revenue Code of 1939. The cited section provides for the deduction from gross income of all "the ordinary and necessary expenses paid * * * in carrying on any trade or business, including * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *". Petitioners had the burden of establishing that the trips were made and the entertainment furnished; the amount of the expenditures; and that the expenditures made for these purposes were "ordinary and necessary" in the carrying on of their business. The *124 evidence wholly fails to establish any of the elements necessary to the allowance of the claimed deduction. Petitioners were the only witnesses. They both testified their business was that of traders in the grain and commodity markets. They placed all of their buy and sell orders at the brokerage office of Merrill Lynch, Pierce, Fenner & Beane located in Canton, eight miles from their home. The brokerage account seems to have been carried in the name of Marian Dannemiller but they both testified it actually was their joint account and they both participated in the trading under this account. It was their testimony that in 1952 they made 14 trips from their home to Chicago, a distance of a little under 500 miles, and 14 trips from their home to New York, a distance of a little over 500 miles, for the purpose of consulting with certain men described by petitioners as specialists and experts in the field of grain and commodity trading. They testified that on these trips they expended the total sum of $4,325.60 for travel expenses, including sums for meals and lodging while away from home, and in addition thereto they spent $550 in entertaining their New York consultant. Petitioners *125 introduced no evidence on which a determination could be made that such trips, which petitioners said they took for the purpose of consulting specialists, would be ordinary and necessary. It is common knowledge that hundreds of thousands of citizens in the United States deal in the grain and commodity exchanges of Chicago and New York through the local offices of brokers equipped with wire and telephone services. We know of no business practice by such dealers to take trips to Chicago and New York to consult market experts. Certainly this record supplies no evidence warranting a classification of such trips as an ordinary business practice. Petitioners argue the trips were to acquire knowledge and learning, helpful to them in their business of grain and commodity traders. But money spent in acquiring learning and knowledge is not an ordinary expense in the operation of a business. Welch v. Helvering, 290 U.S. 111. Since there is nothing within the sphere of judicial notice and nothing in this record on which to base a determination that such trips for the purpose made would be ordinary business practice by grain and commodity traders, the expenditures for said trips are *126 not allowable as ordinary and necessary business expenses. The same infirmity exists with respect to the evidence concerning the entertainment expenses. These are said by petitioner to be for the entertainment of Owen K. Taylor in New York who, Marian Dannemiller said, had since died. The record shows petitioners paid Taylor over $7,000 for his services (mostly in the form of a weekly letter) in 1952, which the Commissioner allowed. But in any case there is not a shred of evidence on which to base a conclusion that such entertainment of a consultant by a grain and commodity dealer would be ordinary. The evidence, which petitioners presented to establish the fact that the trips were actually made and the amounts of the expenditures, was confusing and contradictory. There was not one letter from any of the so-called experts. There was not a single hotel or motel receipt. Walter Dannemiller could not even remember the names of either of the two Chicago experts they visited. Marian Dannemiller could remember their names and she said one was dead and the other had left Chicago for parts unknown. Marian Dannemiller testified she kept a diary or "ledger book" of the trips with dates *127 and itemized expenditures. She said this book had been lost and intimated it had been turned over to a revenue agent, who was dead at the time of trial, and the diary had never been returned to her. She also said her accountant in Canton knew of this book but he was not called to testify. However, she said she remembered what was in the book and she had notatations on a calendar as to dates, so she was able to reconstruct it. She produced her reconstruction of the book that she said was lost. She was very positive about the truth of its contents and especially as to the dates. She and her husband were equally positive that each trip was a twoday trip; that is, they would drive to Chicago or New York one day, stay overnight and drive back to their home the next day. Since each round trip was approximately a thousand miles, their conferences with their experts must have been at night. The dates of the trips as shown by the ledger book show two trips made on Fridays in 1952 and four trips made on Saturdays in 1952. One other trip was made on Lincoln's birthday in 1952. As to the sums allegedly spent on the trips, we have only the reconstructed ledger account book which was actually *128 the testimony of the petitioners, for it was stipulated the book would be received as their oral testimony of each item contained therein. Petitioners did introduce 35 can celled checks totaling $3,025, payable to cash and cashed in or around Massillon, Ohio. They argue these checks are partial corroboration of their trip expenditures for they testified their practice was to cash a check and secure money to defray their trip expenses. The cancelled checks do not corroborate anything. The dates of the checks and the dates of the trips do not correspond in any way and neither do the amounts. It is just as probable that the checks were cashed for living expenses. It would serve no useful purpose to further point out the contradictory inferences and conclusions which could be drawn from the evidence presented. Petitioners failed to carry their burden of establishing the expenses were actually paid and in any event failed to carry their burden of establishing that such expenditures would be ordinary and necessary business expenses. The second issue deals with the petitioners' liability for not filing a declaration of estimated tax and for substantial underestimate of estimated tax for *129 1952. Petitioners admit that they did not file such declaration until January 15, 1953 and that no payment was made with the declaration. Section 294(d)(1)(A), Internal Revenue Code of 1939, provides for an addition to tax in case of "a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, * * *". The petitioners admit that they did not file a declaration within the time prescribed but argue that they had reasonable cause for not doing so. They first argue that they relied upon the advice of a certified public accountant in filing their declaration on January 15, 1953. They next argue that it would have been impossible to estimate their income because of the speculative nature of the grain and commodity business. Neither argument has any merit. Petitioners did not testify that their accountant advised them not to file a declaration for 1952. Their accountant, who lived in Canton, did not testify. As to petitioners' argument concerning the speculative nature of their business, we have held that speculative business is not *130 a reasonable cause for not filing a declaration of estimated tax. Joseph Maloney, 25 T.C. 1219. Petitioners admittedly had gross income of approximately $37,000 in 1951 and intended, at least, to show a profit in 1952. The filing of a declaration of estimated tax was required by section 58, Internal Revenue Code of 1939. On the evidence presented we conclude that the record does not justify a finding that the failure of the petitioners to file a timely declaration of estimated tax for 1952 was due to reasonable cause and not to wilful neglect. We also conclude that since such declaration was not filed within the time prescribed, there was also a substantial underestimate of estimated tax. Josef C. Patchen, 27 T.C. 592. Therefore, the petitioners are liable for additions to tax under both sections 294(d)(1)(A) and 294(d)(2), Internal Revenue Code of 1939. Decision will be entered for the respondent.