Bert G. Ashby v. Commissioner.
Ashby v. Commissioner
Docket No. 56937.
United States Tax Court
T.C. Memo 1959-113; 1959 Tax Ct. Memo LEXIS 133; 18 T.C.M. (CCH) 514; T.C.M. (RIA) 59113; May 29, 1959
*133 Petitioner, a practicing attorney during the years in question, failed to file income tax returns for the years 1945 to 1953, inclusive. Held, a part of the deficiency for each of the years 1945 to 1953, inclusive, is due to fraud with intent to evade taxes. Understatements determined. Held, further, that additions to tax under section 291(a) for failure to file timely returns and under sections 294(d)(1)(A) and 294(d)(2) for failure to file declarations of estimated tax and for substantial underestimation of tax were properly imposed in amounts to be determined under Rule 50. Bert G. Ashby, pro se, 2034 Commerce Street, Dallas, Tex. Timothy G. Warner, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in respect to petitioner's income tax and additions to tax, as follows: [1]
Additions to Tax
Sec. 294
Sec. 294
Year
Deficiency
Sec. 291(a)
Sec. 293(b)
(d)(1)(A)
(d)(2)
1945
$4,345.94
$1,086.48
$2,172.97
$434.59
$260.76
1946
1,141.50
285.38
570.75
114.16
68.49
1947
917.79
229.45
458.90
91.76
55.07
1948
1,434.36
358.59
717.18
143.44
86.06
1949
479.70
119.93
239.85
48.00
28.78
1950
1,726.96
431.74
863.48
172.72
103.62
1951
1,333.12
333.28
666.56
133.28
79.99
1952
2,017.14
504.29
1,008.57
201.68
121.03
1953
2,088.84
522.21
1,044.42
208.88
125.33
The issues presented for decision are (1) whether petitioner realized unreported income for each of the years 1945 to 1953, inclusive, for which income tax returns *135 reporting such income should have been filed; (2) whether any part of the deficiency for each of the above years was "due to fraud with intent to evade tax" within the meaning of section 293(b); (3) whether petitioner is liable for the 25 per cent addition to tax for failure to file returns on income earned during the years 1945 to 1953, inclusive, as provided in section 291(a); and (4) whether petitioner is liable for additions to tax under section 294(d)(1)(A) and 294(d)(2) for failure to file declarations of estimated tax and for substantial underestimation of the estimated tax. Findings of Fact Some of the facts have been stipulated, and, to the extent so stipulated, are incorporated herein by this reference. Petitioner is an individual residing in Dallas, Texas. During the period 1945 to 1953, inclusive, petitioner was a practicing attorney and had been such since 1925, devoting the majority of his time to the general practice of law. Petitioner did not file any income or estimated tax returns or pay any such taxes, either by direct remittance or from withheld income, for the years 1919 to 1939, inclusive, or for the years 1941, 1943, and 1945 to 1953, inclusive. Petitioner *136 filed a timely return for the taxable year 1940 and paid a tax of $20.21. He filed a joint return with his former wife, Mary Ashby, for the taxable year 1942, which return showed no tax to be due. Ashby filed a joint return with his former wife, Mary, for the taxable year 1944 and paid a tax of $376.05. He paid an addition to the tax of $37.60 and interest on the deficiency. During the period 1945 to 1953, inclusive, petitioner prepared and maintained a running memorandum record of fees, by the day and month, received by him for legal services, and of payments made by him for certain business and other expenses. These memoranda were maintained in the regular course of petitioner's law practice. Ashby maintained the records of his fee collections on the memorandum slips for the period beginning January 1, 1945, through the year 1949. His fee collections were reported in a black ledger book, referred to by Ashby as his "A" book, for the period 1950 through 1953, except for the period March 24 to May 29, 1953, during which time his fee collections were recorded in his so-called "B" book. Petitioner married Mary Ashby on August 2, 1939, and they lived together as husband and wife *137 until their divorce on November 10, 1949. Petitioner was married to Mabel Ashby at Hot Springs, Arkansas, on March 15, 1950. Petitioner was divorced from Mabel Ashby on August 17, 1953, after which he remarried Mabel on February 4, 1954. Thereafter, on August 12, 1954, petitioner and Mabel Ashby were divorced for the second time. Petitioner's books and records for the period from 1945 to September 1949 disappeared from his possession in September 1949. Petitioner did not know what happened to his books and records when they disappeared in September 1949, or who might have taken them, although it did occur to him and caused him concern that the Internal Revenue Service might have obtained possession of them. Again, petitioner's books and records (this time for the period after September 1944) disappeared in March 1953 and he learned that Mabel had taken them. Shortly after petitioner discovered his books missing in 1953, his wife, Mabel, left him, and each time Mabel came to get her support check from petitioner during their separation, he would inquire of her as to his books and records. Mabel sought petitioner's permission to return to him in 1953, which permission he *138 conditioned upon Mabel's returning the books and records to him. Mabel Ashby returned his books after keeping them from March 1953 to about May 29, 1953, but informed him that she had photostated them and would turn them over to the Internal Revenue Service if he did not treat her as she desired to be treated. Mabel again took petitioner's books and records in 1954. Mabel Ashby was constantly threatening to send petitioner to the penitentiary by turning his books and records over to the Internal Revenue Service if he did not pay her certain monies. On the occasions when petitioner and Mabel met or had a conversation on the telephone, she requested or demanded money from him, and he, in turn, requested or demanded that she return to him his books and records. By instrument dated June 14, 1954, petitioner and Mabel Ashby entered into a property settlement agreement written by petitioner in longhand and thereafter typed by Mabel, which read as follows: "Plaintiff and defendant agree that for and in consideration of the above set out, defendant agrees to pay fifty dollars cash upon the filing of the divorce petition and fifty dollars per week thereafter until the cash sum *139 of $250.00 has been paid, at which time the divorce will be granted and certain personal records be returned to the defendant by the plaintiff, which are of a personal nature, and plaintiff hereby agrees to keep private such items above mentioned and return same unmolested." The private records referred to in the property settlement agreement were petitioner's private books and records of his law business. When Ashby asked Mabel to turn over to him his books and records, after complying with his part of the property settlement agreement, she informed him that she might give them to him, whereupon Ashby agreed to pay an additional $25 to Mabel if she would go and get his records, and by a receipt dated July 14, 1954, drawn by petitioner and signed by Mabel, she acknowledged the receipt of this $25 in the following terms: July 14, 1954, received of Bert Ashby, $25.00 to pay in advance and in full for return of office records held by Mabel Ashby. From the time Mabel had the petitioner's books and records photostated in 1953, until she took them again in 1954, she threatened on numerous occasions, at least six or eight times, to turn them over to the Internal Revenue Service and *140 send him to the penitentiary. On July 16, 1954, Mabel Ashby turned over to the Internal Revenue Service the memorandum books and records of petitioner for the years 1945 to 1953, inclusive, which books and records contained an account of petitioner's fee collections and certain business and other expenses. Petitioner knew he was required to file income tax returns for the years 1945 to 1953, inclusive. His failure to file was not because of ignorance of the law, mistake, or inadvertence. Petitioner's only answer as to why he failed to file income tax returns for the years 1945 to 1953, inclusive, was that he was worried over "one wife who went insane and another who was just as crazy." On May 21, 1958, petitioner entered a plea of guilty to the criminal charge of wilfully failing to file income tax returns for the calendar years 1952 and 1953 in violation of section 145(a) of the Code of 1939. On the same day, the United States District Court for the Northern District of Texas, Dallas Division, entered a judgment sentencing petitioner to pay a fine of $500, which fine was suspended and probated for a period of two years from the date of the judgment. In the statutory notice *141 of deficiency, respondent computed petitioner's adjusted gross income by totaling the receipts disclosed on the books and records, plus income annualized over that portion of each of the years for which no adequate records were maintained. From these amounts, respondent deducted certain business expenses as shown in petitioner's records, plus certain additional expenses which respondent deemed reasonable. Petitioner is entitled to the following deductions for business expenses in excess of those allowed by respondent in determining adjusted gross income: Year
Amount
1945
$3,675.00
1946
1,890.00
1947
1,485.00
1948
1,935.00
1949
1,935.00
1950
1,950.00
1951
2,703.80
1952
2,325.00
1953
2,850.00
Petitioner has not proven that he is entitled to any deductions from adjusted gross income to arrive at net income, other than the standard deductions for all the years in issue, except the year 1950 where petitioner incurred and paid medical expenses in the amount of $1,586.50. Petitioner realized unreported income for each of the years 1945 to 1953, inclusive, for which income tax returns should have been filed and taxes paid. A part of the deficiency for *142 each of said years was due to fraud with intent to evade tax within the meaning of section 293(b). Petitioner's failure to file income tax returns for each of the years in question was not due to reasonable cause. Petitioner's failure to file a declaration of estimated tax for each of the years 1945 to 1953, inclusive, was not due to reasonable cause. Petitioner substantially underestimated his estimated taxes for each of the years 1945 to 1953, inclusive. Opinion Unreported Income Petitioner does not contest the amounts of the gross receipts determined by respondent to have been received by him, but strongly urges that respondent erred in the determination of business expenses. The record establishes that the gross income for the years 1945 to 1953, inclusive, was arrived at by totaling the gross receipts disclosed in petitioner's books and records, plus the income prorated over that portion of each of the years for which no records were maintained. From this gross income, respondent determined certain deductions for business expenses which were disclosed on these same books, plus expenses determined by respondent to be reasonable from the evidence at his disposal. *143 At the trial of this case, petitioner testified that he had incurred expenses in excess of those allowed by respondent in arriving at adjusted gross income as shown in the statutory notice. With the exception of five telephone bills for different months in the years 1951, 1952, and 1953, no corroborative evidence was introduced by petitioner to support his testimony. Petitioner confined his testimony on the claimed additional expenses to the years 1946 to 1953, inclusive. He stated that his available records did not help him in arriving at a figure for business expenses in 1945. He testified that he was entitled to the following additional business expenses: Year
Amount
1945 $0
1946
2,520
1947
1,980
1948
2,580
1949
2,580
1950
3,400
1951
3,605
1952
3,100
1953
3,800
It is apparent from the testimony of the internal revenue agent that the amount determined as expenses was minimal when compared to the gross income determined. We note, to respondent's credit, that, on brief, he made a practical effort to reach a reasonable result on the issue of expenses, and conceded that petitioner is entitled to one-half of the additional amounts claimed by him *144 as business expenses. We think, despite the failure of Ashby to support his testimony with any credible evidence, aside from five telephone bills, we are justified, in order to avoid a harsh and unrealistic result, in applying the principles of Cohan v. Commissioner, 39 Fed. (2d) 540 (C.A. 2, 1930), at the same time, of course, resolving any doubts in the exercise of our judgment against petitioner, upon whom the burden of proof rests (and who, in our opinion, is unworthy of belief except to the extent to which he is corroborated by surrounding circumstances). We have carefully examined the record and conclude therefrom that petitioner is entitled to the following amounts as business expenses in addition to the amounts determined by respondent in his statutory notice: Year
Amount
1945
$3,675.00
1946
1,890.00
1947
1,485.00
1948
1,935.00
1949
1,935.00
1950
1,950.00
1951
2,703.80
1952
2,325.00
1953
2,850.00
It should be noted that for the year 1945, we have found that petitioner incurred $3,675 of additional expenses, even though no detailed evidence was offered by petitioner as to this year. The additional expenses, as found by us for *145 all of the years 1946 to 1953, inclusive, averaged approximately one-third of the adjusted gross income, as determined by respondent. Applying this figure to the adjusted gross income for 1945, we arrived at the above additional business expenses for that year. We think that it is apparent that petitioner must have had some business expenses in 1945 and that a complete disallowance would produce an obviously harsh and clearly unrealistic result. Cohan v. Commissioner, supra. We add for completeness that even if we were to allow the total amounts of additional expenses claimed by petitioner, the resulting unreported income would still be significant. Net Income Ashby testified to certain casualty losses, medical, nursing and hospital expenses, which he alleged were proper deductions in arriving at net income. No supporting evidence was introduced, although police reports and hospital records, which he testified would verify his statements, were easily obtainable by petitioner but were not introduced. It is doubtful that Ashby, who is a former attorney, failed to consider the possible inference to be drawn from the absence of any corroborative evidence in carrying *146 his burden of proof, particularly when such evidence was easily obtainable. Petitioner's books and records contain entries showing not only income but also dates when he went on vacations or was sick or in the hospital. In all the years (with the exception of 1950, which will be discussed infra) where there is anything in the record to support petitioner's claims, the standard deduction, as determined by respondent, results in a greater tax benefit to petitioner than his individual claims. Where the books are silent, we infer that petitioner did not incur the claimed expenses. Petitioner testified that in 1950, his wife, Mabel, had an auto accident near Clayton, New Mexico, and she was hospitalized for approximately eight weeks. He estimated that the medical expenses totaled $3,173. There is some confusion as to the dates that the alleged expenses were paid by Ashby, but he testified that the bulk of these expenses was paid in 1950. Petitioner could have produced corroborating evidence of the amount of his medical expenses, but did not do so. We think his estimate was excessive. We do, however, believe that he did incur and pay substantial medical expenses in that year, not only *147 with respect to his wife's injuries but also because he himself was sick in September and also from November 6 to November 14. We have applied the principles of Cohan v. Commissioner, supra, and find petitioner's medical expenses for 1950 to be $1,586.50, which is one-half of the total amount claimed by him for that year. Fraud The burden rests with respondent to prove fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751 (1950). It should be noted at the outset that our conclusion on the fraud issue is to be based upon consideration of the entire record properly before us, and we are not limited to a consideration of respondent's affirmative evidence. Frank Imburgia, 22 T.C. 1002 (1954); Wallace H. Petit, 10 T.C. 1253 (1948); L. Schepp Co., 25 B.T.A. 419 (1932). We also recognize that in this, as in many fraud cases, the proof of fraud, if it is to be established, must depend in some respects upon circumstantial evidence. Fraudulent intent can seldom be established by a single act or by direct proof of the taxpayer's intention. It is usually found by surveying his whole course of conduct *148 and is to be adduced as any other fact from all the evidence of record and inferences properly to be drawn therefrom. M. Rea Gano, 19 B.T.A. 518 (1930), in which we said, in part (p. 532): "To establish fraud by direct proof of intention is seldom possible. Usually it must be gleaned from the several transactions in question and the conduct of the taxpayer relative thereto." After reviewing the entire record and applying the above-noted principles, we are convinced that a part of each deficiency in this case was due to fraud with intent to evade tax within the meaning of section 293(b). In the instant case, we may readily infer that petitioner knew what he was doing since he had the educational background of a lawyer, and was, during the period involved, actively practicing law. Moreover, he admitted that he knew he was required to file returns and he also admitted that his failure to file was not due to mistake or inadvertence. In addition to his knowing failure to perform the duties required of him under the income tax laws, further evidence of fraudulent intent is found in his own testimony at a hearing of a motion to suppress and dismiss an indictment, under *149 section 145(a), in the criminal action entitled, "United States of America v. Bert G. Ashby," in the Federal District Court of the United States for the Northern District of Texas, Dallas Division, held on the 21st of December, 1956. This testimony has been submitted in evidence by stipulation. Briefly, the testimony discloses that petitioner's wife had secreted his books and records, for varying periods of time, and threatened to turn them over to the Internal Revenue Service. Petitioner was quite persistent in his efforts to keep the Government from obtaining those records, and the inference to be clearly drawn is that he did so in order to avoid the payment of taxes which he knew he owed. For illustrative purposes, we think it proper to quote some of that testimony. "Q. You say your books and records were gone in 1953. Did you subsequently find out who had those records and what had been done with them? "A. Yes, sir, she left home and she was gone two weeks, and I gave her a check every week. * * * The last time she was over there she said, 'Well, of course, you know I have your books.' She had them the whole time. "Q. In 1953? "A. Yes, sir. "Q. What did she say about *150 it? "A. She said, 'Well, I will bring them back.' She said, 'I have decided I don't want a divorce, I don't want to stay away, and I want your permission to come back.' "I said, 'Provided you bring those books back you can come back.' "Q. Did she bring them back? "A. She just threw them down on my desk and she said, 'There they are.' She said, 'I want to tell you something, don't think you are smart, I have had photostatic copies made of every instrument in those books.' She said, 'If you don't do exactly as I think is correct and treat me like I think you ought to treat me,' she said, 'those photostatic copies are going to the Internal Revenue and,' she said, 'you know what is going to happen.' "Q. Had you ever discussed with her the fact that you hadn't filed an income tax return? "A. I had; and I told her I needed the books back for that purpose at that time, and I told her not only that, I said, 'You are liable, too, you haven't filed any and you know I haven't filed any.' "Q. Did she again steal your books after she brought them back in 1953, after she had stolen them, and said she had had photostatic copies made of them, did she steal them again? "A. Yes, sir. *151 * * *
"Q. Was she threatening all this time to put you in jail if you didn't give her certain moneys, with these books and records? "A. She used it constantly. She said, 'You know what is going to happen when I turn those books over to the Internal Revenue.' "I said, 'I can't help it.'" We think it clear from the quoted statements of Ashby (and more statements to the same effect which we deem it unnecessary to quote herein), that petitioner was doing his best to prevent his books and records from being made available to the Internal Revenue Service, and that his obvious purpose and intent was to prevent the Service from collecting from him the taxes he knew he owed. In M. Rea Gano, supra, we said, in part (p. 533): "A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse would seem to permit of no difference of opinion. It evidences a fraudulent purpose." Upon the basis of the whole record, we hold that some part of the deficiency for each of the years involved was due to fraud with intent to evade taxes. Additions to Tax under Section 291(a) Respondent has determined *152 that petitioner is subject to an addition to tax for failure to file a return under section 291(a). That section provides certain monetary additions when no return is timely filed unless it be shown that such failure was due to reasonable cause and not due to wilful neglect. It is clear from what we have said above that petitioner's failure to file was not due to reasonable cause within the meaning of section 291(a). Additions to Tax Under Section 294(d)(1)(A) and 294(d)(2) For each of the years in question, respondent has determined additions to tax under section 294(d)(1)(A) and 294(d)(2) for failure to file estimated tax and for substantial underestimation of estimated tax. There has been no satisfactory showing that petitioner's failure to file said declarations was due to reasonable cause and petitioner is liable to additional tax under section 294(d)(1)(A). Since no declarations of estimated tax were filed, petitioner substantially underestimated the estimated tax and is therefore liable for the additions to tax asserted under section 294(d)(2). We sustain respondent, therefore, with respect to the additions to tax in question (subject to a recomputation under Rule 50 in *153 light of our determinations reducing the understatements of income in the years in question). As to the applicability of additions to tax under both 294(d)(1)(A) and 294(d)(2), see Patchen v. Commissioner, 258 Fed. (2d) 544 (C.A. 5, 1958), affirming in part 27 T.C. 592 (1956); Abbott v. Commissioner, 258 Fed. (2d) 537 (C.A. 3, 1958), affirming 28 T.C. 795; Hansen v. Commissioner, 258 Fed. (2d) 585 (C.A. 9, 1958), affirming in part and reversing in part T.C. Memo. 1957-113; G. E. Fuller, 20 T.C. 308 (1953), affirmed on other grounds 213 Fed. (2d) 102 (C.A. 10, 1954). But cf. Acker v. Commissioner, 258 Fed. (2d) 568 (C.A. 6, 1958), reversing T.C. Memo. 1957-17, certiorari denied 358 U.S. 940 (1959); Commissioner v. Acker, certiorari granted 358 U.S. 940 (1959). Decision will be entered under Rule 50. Footnotes
1. All section references are to the Code of 1939 unless otherwise specified.↩