**RUST–OLEUM CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 65 C 772.**

United States District Court
N. D. Illinois, E. D.

Dec. 26, 1967.

William A. Barnett, Crowley, Barnett & Goschi, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, U. S. Atty., for defendant.

### DECISION ON MERITS

WILL, District Judge.

Plaintiff sues for income tax refunds of deficiency assessments heretofore paid, attributable to disallowed deductions for "professional fees" of $8,296.-82 [1] for its fiscal year 1961 and $59,-008.49 [2] for its fiscal year 1962. The

---

1. $8,296.82 paid to Charles B. Cannon of which he retained $5,129.70 ($2,345.30, fees re survey, and $2,784.40, fees re litigation) and disbursed $1,177.28 to Howard L. Lampa, $1,326.63 to Francis C. Browne (legal fees), $415.75 to Dr. Norman C. Meier, and $247.46 to the court reporter (for discovery deposition). Of the $8,296.82, $3,938.33 was paid in connection with the public reaction survey and $4,358.49 in connection with the lawsuit.

2. The $59,008.49 is composed of these payments: $39,992.30 to Cannon (who retained $12,776.05, and paid Lampa $1,-946.68, Dr. Meier $75, Lyon and Lyon $113, and the court reporters $2,168.61); Lampa $11,322.78; ARB Surveys, Inc. $1,974.20; Dr. Meier $1,794.67, and Squire, Sanders and Dempsey $3,924.54. Of the $27,216.25 payments retained by Cannon, $11,631 were fees re survey and $15,585.13 were fees re lawsuit. Of the $59,008.49 paid in 1962, $37,453.15

expenditures were payments to plaintiff's attorney, Charles B. Cannon, in connection with litigation instituted on April 28, 1960, in Ohio against the Tremco Manufacturing Company, and the costs of public surveys made during the course of that litigation, which was settled,[3] the surveys later being used in connection with plaintiff's advertising.

Subsequent to the settlement of the suit, a stipulation was filed in the Patent Office stating that: "Whereas, Civil Action No. 36,093 in the United States District Court for the Northern District of Ohio between Applicant and Opposer has been terminated by agreement of the parties; it is hereby stipulated that the above identified opposition be and is hereby withdrawn." On June 20, 1962, a notice from the "Members, Trademark Trial and Appeal Board" was filed: In view of the stipulation filed June 18, 1962, the opposition is dismissed.

A stipulation and supplemental stipulation of facts have been entered into by the parties which reveal these undisputed facts: Plaintiff, an Illinois corporation, which manufactures and sells rust preventive surface coatings, reported income of $553,797.23 for the fiscal year 1961 on which it paid corporate income tax of $282,474.56. A $7,489.40 deficiency was assessed and paid, with $923.35 interest, the Government disallowing a $14,402.70 deduction for professional fees out of a claimed amount of $45,139.88. Plaintiff maintains it is entitled to a deduction of $8,296.82 of the $14,402.70 disallowed with a resulting refund of $4,314.34 and $531.96 interest.

As to 1962, plaintiff reported income of $665,183.73 on which it paid a tax of $340,395.54, and the Government assessed a deficiency of $32,619.34, which plaintiff paid with interest of $2,064.40. For that year, the Government disallowed a deduction of $68,085.57 advertising and professional fees, and plaintiff believes it is entitled to a deduction of $59,008.49 for which a refund of $30,684 and $1,942.32 interest are sought.

The Amended Complaint in the Tremco litigation in the Northern District of Ohio alleged *two* separate causes of action: the first for infringement of plaintiff's trademark "Stops Rust," the second, for unfair competition (realleging all the assertions as to the first cause of action) and then alleging unfair competition and aggravation of the trademark infringement, by dressing of products in a color scheme and paint motif closely resembling that of plaintiff and by employing sales displays resembling those long employed by plaintiff, thereby deceiving and tending to deceive purchasers and the consumer public into believing that, contrary to fact, defendant's products had their source in plaintiff, constituting unfair competition both at common law and under the Trademark Act. In addition to damages, an injunction against unfair competition was also sought.

The court concludes that if "[t]axation * * * is eminently practical, and a practical mind * * * [considers] results" (Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991 (1930)), this case is a prime instance where justice can best be done by giving

---

was paid in connection with the public reaction survey and $21,555.34 for services in the lawsuit.

3. The stipulation dismissing the Tremco litigation in June, 1962, provided simply:
"Pursuant to written agreement of the parties dated June 14, 1962, whereby all matters in dispute between them have been settled, this case may be disposed of by the following entry: Dismissed without prejudice. Each party to bear its own costs."

The stipulation itself provided that:
" * * * defendant is not bound by any usage of the term or expression 'trademark' or other indication of plaintiff's claim to trademark rights in reference to the materials herein stipulated, it being understood that the defendant reserves all of its rights to attack plaintiff's claim to trademark rights in any matter appearing on plaintiff's aforesaid labels, advertising brochures and other advertising materials."

weight to the actualities of the situation. Since the expenditures were in substantial part utilized for purposes generally considered ordinary and necessary business expenses, i. e., litigation and advertising costs, it is necessary to ascertain, so far as possible, the extent to which they related to the protection of a capital asset, the trademark on the one hand, and the extent to which they related to the unfair competition litigation and advertising, on the other hand.

The following considerations and evidence are relevant:

(1) The Tremco litigation was settled *prior* to trial, with the result that the survey evidence was not used in an actual trial. Further costs of litigation were saved by plaintiff, but past costs of litigation concerned *both* the trademark protection and the unfair competition litigation.

(2) While the settlement of the litigation assured the dropping of the Patent Office opposition to plaintiff's trademark by Tremco, thus ensuring plaintiff the sole use of the mark, it also stopped the alleged unfair competition by Tremco apart from any trademark rights, and prescribed a permissive but restricted dress for Tremco's products in the future.

(3) The surveys were extensively used in subsequent advertising. Some 588,000 copies of the summary of the results of the Lampa-Meier survey were made and sent to over 12,000 distributors and salesmen. Plaintiff had in previous years spent large sums in advertising. It had made over a hundred surveys. It had used these surveys to guide its advertising programs.

(4) Plaintiff's business was greatly enhanced as a result of the advertising.

(5) Attorney Cannon testified that the Ohio suit was primarily to enjoin Tremco's unfair competition and recover damages and not for infringement of the trademark.

(6) Attorney Cannon further testified that the surveys, although initially prepared for the suit, were not used in the Tremco litigation, although they had been "submitted to counsel." The Ohio *court* suggested settlement talks. The court had not been shown the surveys nor was there discussion about them with the court. The surveys were not used in any manner in the Patent Office.

(7) The Government concedes that the surveys established confusion, an indispensable element to recovery in an unfair competition action.

The Government argues that plaintiff acquired rights which will be of benefit substantially beyond the year in which the expenditures were incurred and that the litigation against Tremco was primarily a suit to establish plaintiff's property rights to "STOPS RUST" as a trademark. The Government further urges that the principal purpose of the Tremco litigation was to establish *title* to the trademark and not for unfair competition and damages for lost profits. It differentiates the case of Rassenfoss v. Commissioner of Internal Revenue, 158 F.2d 764 (7th Cir. 1946), as being an instance where the protection of title was not the primary purpose of the suit, but merely incidental thereto, and therefore the costs of litigation could be an ordinary and necessary business expense.

It is further argued by the Government that expenditures for the protection of a trademark are not depreciable over any period of time because no reasonably accurate estimate of the useful life of a trademark can be made. Norwich Pharmacal Co. v. Commissioner of Internal Revenue, 30 B.T.A. 326; 4 Mertens Law of Federal Income Taxation, Sec. 23.10, p. 35. It points out that plaintiff has the burden as to the deduction for depreciation of expenditures for capital assets and since no evidence as to the useful life of its trademark has been offered by plaintiff, no depreciation deduction is allowable, and further since plaintiff made no election under Section 177 for the five-year period of amortization of trademark expenses, none is allowable.

Finally, the Government urges that if the court concludes this is a case where a lump sum payment should be allocated between deductible and nondeductible expenditures, the burden is on the plaintiff to establish a reasonable method of allocation. Absent evidence of a reasonable method, it contends that the court has no power to make an allocation. Colonial Ice Cream Co. v. Commissioner of Internal Revenue, 7 B.T.A. 154. In any event, the Government asserts that the "primary purpose" for the survey expenditures was litigation, not advertising.

■ As to plaintiff's contention that the survey expenditures were incurred at least in part for advertising expenses, the Government answers that they were all incurred for use in litigation. Plaintiff has the burden of proving the deductible amounts and segregating them from the nondeductible amounts. Harden M. Loan Co. v. Commissioner of Internal Revenue, 137 F.2d 282 (10th Cir. 1943); Nowland v. Commissioner of Internal Revenue, 244 F.2d 450 (4th Cir. 1957); Brinson v. Tomlinson, 264 F.2d 30 (5th Cir. 1959). The Government cites Mr. Cannon's testimony, and the vouchers, that his charges were for preparation of the surveys for use in the litigation, as were Mr. Lampa's charges (he is in the business of trademark research). Nor were the advertising uses of the surveys discussed until after the determination to go ahead with the national survey. The court reporter's depositions of the interviewers were billed to plaintiff under the litigation heading and were evidence depositions.

■ While expenditures for advertising are generally ordinary and necessary business expenses, the Government points out that where the expenditures are for the acquisition or protection of a capital asset to be used in advertising they must be capitalized. French Broad Ice Cream Co. v. United States, 52 A.F.T.R. 1396 (involving a signboard); Simonson v. Commissioner, P-H Memo. T.C. ¶ 46,197. The Government contends that the survey (as well as the trademark) are capital assets to be used in

advertising which definitely has a useful life of more than one year, and that the evidence indicates an original estimate of three to five years usefulness; that they have been used in all the years 1962 through 1966, and are still useful to plaintiff and will be so for an indefinite time in the future. The plaintiff has made no offer as to what the useful life might be but the evidence establishes that in no event could it be less than five years. Easter v. Commissioner of Internal Revenue, 338 F.2d 968 (4th Cir. 1964). The Government concludes therefore that all of the disallowed deductions for expenses in the Tremco litigation must be capitalized.

It is plaintiff's position, on the other hand, that the expenditures it made were "primarily to recover lost profits and protect income and were therefore ordinary and necessary expenses" (under the unfair competition count of the Tremco litigation) and "that the survey expenses were also deductible as advertising expenses."

Plaintiff states that earlier surveys had been conducted at the dealer level to provide information for the sales structure and advertising campaign in a particular area. Later, the surveys were conducted in established markets of plaintiff to tailor sales and advertising campaigns to the specific needs of the area. Plaintiff's expansion program advertised heavily to the consumer market by means of radio and television and other forms of advertising.

Plaintiff contends that Tremco engaged in increasingly flagrant unfair practices subsequent to 1956 as to the phrase "Stops Rust" which plaintiff had extensively advertised, so plaintiff's counsel, Atty. Charles B. Cannon, on September 30, 1958, notified them of alleged trademark infringement and unfair competition, which Tremco denied. Suit was filed by plaintiff against Tremco on April 28, 1960, in the Federal Court in Ohio.

Plaintiff had theretofore on May 14, 1959, applied in the Patent Office for registration of the "Stops Rust" trade-

mark on the principal register, alleging use since 1951 and such extensive advertising as to acquire a secondary meaning, of plaintiff, Rust-Oleum, as the source of the product. Tremco on December 11, 1959, opposed the issuance of the certificate of registration but the opposition proceeding was suspended pending the outcome of the Ohio suit.

In 1961, pilot surveys were made in Indianapolis and Pittsburgh to establish a format for further surveys. A survey of nine cities showed that 88% of the persons interviewed remembered seeing "Stops Rust" on a label and identified it as a Rust-Oleum product. As previously indicated, the Ohio suit was settled June 14, 1962, by written agreement in which no acknowledgment was made by Tremco that the trademark was valid or that Tremco had infringed or engaged in unfair competition. There was an agreement to terminate the Patent Office opposition to plaintiff's registration of "Stops Rust" and plaintiff permitted Tremco to use the text of the trademark in a non-confusing manner.

Plaintiff states that "No use was made of the survey in the litigation, but a six-page colored insert depicting the results of the survey in graphic form was drawn up for publication to dealers and distributors. Beginning in September, 1962, extensive use was made of the survey by advertising its results to dealers and distributors in house organs, trade journals, and by direct mail."

Plaintiff urges that a very substantial purpose for undertaking the surveys was its useability both as an advertising instrument and indicator to show the strength and weakness of its advertising program. Sanitary Farms Dairy, Inc. v. Commissioner of Internal Revenue, 25 T.C. 463 (1955).

Plaintiff maintains that the Tremco litigation was not one to establish its trademark but was to prevent future loss of revenue and to recover past losses for Tremco's unfair competition and that litigation was the normal avenue to take and the expense was an ordinary and necessary business expense, citing Int.

Rev.Code § 162; Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943), (involving legal expenses by dentist assailing a fraud order against him).

Plaintiff especially stresses the legal principle that where an expenditure has a dual purpose its treatment for tax purposes depends on its primary purpose—if to defend of perfect title, it is capitalized under § 263, but if for some other business purpose, it is deducted in the year in which incurred although perfection of title is incident. Plaintiff cites in support of its contention the decision of this Circuit's Court of Appeals in Rassenfoss v. Commissioner of Internal Revenue, 158 F.2d 764 (7th Cir. 1946), wherein it was held that legal fees paid by a partner were ordinary and necessary business expenses in the years in which paid, although the suit involved an employee's claim to a partner's interest. The suit was settled, granting the employee a 1.75% interest. The court stated, at 767:

"* * * [T]he Commissioner contends that such expenditures 'were more than mere ordinary business expenses' and that they are not deductible because made in protecting and defending petitioner's title to the partnership business and property. The Tax Court sustained this view. * * * [W]e reach a contrary conclusion. In the first place, the factual basis for such a contention is more fanciful than real. Laying aside the legal question as to whether petitioner had any title to the partnership assets, it is perfectly plain * * * that the main and primary purpose of the suit which petitioner defended was for an accounting and any question of title was merely incidental thereto. This is borne out by the compromise which was finally effected, by which Campbell was awarded almost infinitesimal and only a limited interest in the partnership."

Other "primary purpose" cases plaintiff relies on are: Industrial Aggregate Company v. United States, 284 F.2d 639

(8th Cir. 1960); Usry v. Price, 325 F.2d 657 (5th Cir. 1963); Kennecott Copper Corporation v. United States, 347 F.2d 275, 171 Ct.Cl. 580 (1965); Urquhart v. Commissioner of Internal Revenue, 215 F.2d 17 (3rd Cir. 1954). Plaintiff insists that the primary purpose of the Tremco litigation was the protection of income rather than the defense or perfection of title to an asset, and furthermore, since plaintiff was unsuccessful in that litigation so far as perfection of title was concerned, the expenditures were deductible since they were ordinary and necessary and resulted in neither a loss nor a gain of a capital nature.

█ It is plaintiff's contention that the actual use of the surveys, and counsel's fees for services in connection therewith for advertising purposes, entitles plaintiff to a deduction of the cost as an ordinary and necessary expense—despite the fact that the benefits might in some measure extend beyond the year in which the expenses were incurred, or that they were initially incurred for use in litigation pertaining to the trademark. Plaintiff negates the importance of the trademark litigation in Ohio in that it was settled prior to trial, without the results of the survey ever being utilized in any way in the suit, or in the Patent Office.

Both sides, as noted, lay emphasis on the well-established proposition that the primary purpose for which expenditures are incurred determines their tax treatment. As might be expected, they differ diametrically as to what was the principal or primary purpose of the survey expenditures. The taxpayer insists that the surveys were primarily for use in connection with the unfair competition count of the lawsuit and in its advertising program. The government equally vigorously asserts that the surveys were principally conducted to buttress the trademark infringement count and to counter the Tremco opposition to the registration of the mark by Rust-Oleum.

Omniscience, of course, is a power which every judge should possess but unfortunately few trial judges do and this court is part of the great majority. Divining the primary purpose of the surveys here is beyond our competence. Nor do we perceive that all human conduct must necessarily have one primary or principal motivation. In fact, the more "principal" purposes a venture has, the more desirable it may be.

The evidence seems to us to demonstrate that the surveys here had two equally significant contemplated uses, Count One and Count Two of the Ohio suit. As it developed, that suit was settled as was the opposition in the Patent Office without their introduction into evidence but they clearly contributed to the negotiated disposition of those matters. Subsequently they were exploited by plaintiff for advertising purposes but this can hardly be given retroactive significance as the primary purpose for which they were secured. Similarily, the other legal expenses incurred by plaintiff in connection with the Ohio suit appear to us to be logically divisible equally between the two counts.

It is undisputed that the purpose of the first count was to secure a judicial determination that plaintiff had property rights in the mark "STOPS RUST" while the second was to secure money damages for alleged unfair competition, passing off, etc. Expenses of the former would not be deductible while those attributable to the latter clearly would.

It follows, we believe, that the proper determination of the instant controversy is to divide the expenses of the Ohio suit, including those incident to the surveys, equally between those properly deductible and those not so deductible.

We recognize that the apportionment of the expenditures between capital expenses and ordinary and necessary business expenses in this cause may not be exact or precise. But precision is not an indispensable prerequisite. As was said in Buder v. United States, 221 F.Supp 425 at 439 (E.D.Mo.1963):

> " * * * [K]eeping in mind that a determination here can nowhere approach exactitude * * * it is the

best estimate from the evidence in hand that * * * two-thirds of the expenses which taxpayers claim are deductible as business expenses * * and one-third of the expenses must be attributable to the personal non-deductible items category * * *."

The parties are directed to submit a judgment order consistent with the conclusion herein.